IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:23-CT-03078-BO

| | | |
|---|---|---|
| SHELBY REID LENTZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| TRAVON CAMPBELL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

Shelby Reid Lentz ("plaintiff"), a state inmate, filed this civil rights action pro se pursuant to 42 U.S.C. § 1983. The matter now is before the court on defendants' unopposed motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a) (DE 59) and motion to seal (DE 64). The issues raised have been fully briefed and are ripe for adjudication. For the following reasons, the court grants defendants' motions.

**STATEMENT OF THE CASE**

Plaintiff in his unverified § 1983 complaint alleged defendants Travon Campbell ("Campbell"), Aisha Cherry ("Cherry"), Hunter Lewis ("Lewis"), Alexis Lloyd ("Lloyd"), Mayra Miranda ("Miranda"), Daniel Hatley ("Hatley"), John Gray ("Gray"), Unit Manager Domanick Smith ("Smith"), Assistant Unit Manager Michael Arthur ("Arthur"), Captain Calvin Daniels ("Daniels"), and Warden Flemming ("Flemming") failed to protect him from inmate-on-inmate violence in violation of the Eighth Amendment to the United States Constitution. On July 17, 2023, the court conducted an initial review of plaintiff's action pursuant to 28 U.S.C. §

1915(e)(2)(B). The court dismissed defendants Gray and Flemming, but allowed plaintiff to proceed with his Eighth Amendment claim against the remaining defendants.

On December 27, 2023, North Carolina Prisoner Legal Services ("NCPLS") was appointed to conduct discovery on plaintiff's behalf pursuant to the court's Standing Order 20-SO-1. See (DE 36). NCPLS then assisted plaintiff with discovery and provided him legal advice. See (DE 47). On March 24, 2025, defendants filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a), arguing plaintiff cannot establish an Eighth Amendment violation.[1] Defendants alternatively assert the affirmative defense of qualified immunity. Defendants also filed a statement of material facts with an appendix, which included: a declaration from defendants' attorney; declarations from defendants Lewis, Miranda, Cherry, Lloyd, Smith, and Hatley; plaintiff's North Carolina Department of Adult Correction ("DAC") Offender Information report; plaintiff's disciplinary infraction report; DAC policies and procedures; Maury Correctional Institution's ("Maury") Standard Operating Procedure; an incident report and shift narrative; excerpts from plaintiff's medical records; gang records; a declaration from Kimberly D. Grande- the executive director of the Inmate Grievance Resolution Board; and grievance-related documents. Plaintiff did not respond.

## STATEMENT OF FACTS

On September 9, 2021, plaintiff engaged in a physical altercation with inmate Andrew Barry ("Barry") at Maury. ((DE 61) ¶ 5).[2] Plaintiff claims Barry prompted the altercation, and

---

[1] Defendants also argue plaintiff's action should be dismissed without prejudice because plaintiff failed to exhaust his administrative remedies pursuant to 2 U.S.C. § 1997e(a) before filing this action. The court declines to address this argument.

[2] A party's statement of undisputed material facts is "deemed admitted for purposes of the motion [for summary judgment] unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement." Local Civ. R. 56.1(a)(2); Felton v. Moneysworth Linen Serv., Inc., 295 F. Supp. 3d 595, 597 n.1 (E.D.N.C. 2018); Howard v. Coll. of the Albemarle, 262 F. Supp. 3d 322, 329 n.1 (E.D.N.C. 2017), aff'd, 697 F.

2

that Barry stabbed plaintiff unprovoked by the actions of plaintiff. (Id. ¶ 6). The incident occurred in Barry's cell, and it is unclear to defendants whether plaintiff willingly entered Barry's cell. (Id. ¶ 7). Facility policy strictly prohibits offenders from entering another offender's cell. (Id. ¶ 8). Post-incident investigation determined that plaintiff may have willingly entered Barry's cell before the altercation began. (Id. ¶ 9).

Plaintiff claims he was standing outside of Barry's closed cell door, willingly holding a conversation with Barry, when Barry opened the door and pulled plaintiff inside the cell. (Id. ¶ 10). Barry's cell door should have been locked, but Barry manipulated the lock on the door. (Id. ¶ 11). Door lock manipulation can indicate to the prison control center and floor guards that the door is locked, even though the lock was manipulated. (Id. ¶ 12). Door lock tampering is a strictly prohibited Class B disciplinary offense. (Id. ¶ 13).

Prior to the altercation, Barry was returned to his cell following recreation time. (Id. ¶ 14). The defendant floor officers adhered to DAC procedure by confirming with the control center that the cell door was securely locked. (Id.) After completing confirmation, the officers proceeded to release the other offenders, which included plaintiff, for recreation time. (Id. ¶ 15). Plaintiff, who was found in Barry's cell, was outside of the designated recreation area when these incidents occurred. (Id. ¶ 16). Plaintiff is an admitted member of a white supremacist gang. (Id. ¶ 17). Barry also is an alleged gang member. (Id. ¶ 18). It is unclear what prompted the incident between plaintiff and Barry. (Id. ¶ 19). However, plaintiff claims Barry called him a "race traitor" and a "terrorist" during the altercation. (Id.)

---

App'x 257 (4th Cir 2017) (per curiam); see Fed. R. Civ. P. 56(e)(2). Plaintiff did not controvert defendants' statement of material facts. Accordingly, the court adopts defendants' uncontroverted statement of materials facts.

The physical altercation between plaintiff and Barry caused a loud commotion, which alerted prison staff to issue an emergency Code 4. (Id. ¶ 20). Defendants immediately went to separate the offenders and to render aid to plaintiff. (Id.) Once staff arrived at Barry's cell, they separated the offenders and assisted plaintiff in getting medical treatment. (Id.) As a result of Barry's assault, plaintiff claimed he was stabbed multiple times, suffered head trauma, blurred vision, headaches, confusion, mental processing delays, and post-traumatic stress disorder. (Id. ¶ 22). Plaintiff's medical records describe multiple small, lacerated wounds on his head and neck, and bruising around his left eye. (Id. ¶ 23). Plaintiff did not allege that any of the defendants were physically present for, or actually witnessed, what caused the fight. (Id. ¶ 24). This is consistent with defendants' declarations. (Id. ¶ 25).

Plaintiff never informed defendants of any dispute with Barry prior to the September 9, 2021 incident, and never informed defendants that plaintiff feared for his life or was in danger prior to the incident. (Id. ¶ 26). Plaintiff alleges Maury was understaffed, but he never filed a grievance and did not inform defendants of his concerns with staffing. (Id. ¶ 27). Plaintiff alleges another offender was stabbed under similar circumstances on the same day as plaintiff, but the staff and the shift narratives from that day contradict these claims. (Id. ¶ 28).

If an offender fears for his safety, he may request protective custody. (Id. ¶ 37). Under the DAC's policies, "Protective Control (PCON) is the reassignment of an offender from the general population to confinement in a secure area to protect the offender from self-injury or threat of harm by others." (Id. ¶ 38). However, "an offender's request to be placed in protective control does not alone constitute grounds for reassignment." (Id. ¶ 39). The officer in charge must evaluate all the circumstances of each case. (Id. ¶ 40). A determination must be made that the offender's request is legitimate, and that Restrictive Housing is necessary for the continued well-being of the

offender." (Id. ¶ 41). During the investigation, the offender is kept in Restrictive Housing for security. (Id. ¶ 42). Maury regularly seeks to dissuade gang activity by doing reoccurring cell sweeps for weapons. (Id. ¶ 44). DAC policies require all gang activity be reported to the Security Threat Group unit once staff becomes aware of the activity. (Id. ¶ 45).

## DISCUSSION

I.  Motion to Seal

Defendants filed a motion to seal certain exhibits (DE 63). For good cause shown, defendants' unopposed motion is GRANTED. See Local Civil Rule 26.1(a)(1), EDNC. The Clerk of Court is DIRECTED to maintain (DE 63) under seal.

II. Motion for Summary Judgment

A.  Standard of Review

Summary judgment is appropriate when, after reviewing the record as a whole, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment initially must demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248– 49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

B.   Analysis

Defendants move for summary judgment as to plaintiff's Eighth Amendment claim against them in their official capacities. An action by a private party to recover money damages from state officials in their official capacities is barred by the Eleventh Amendment. Huang v. Board of Governors of University of North Carolina, 902 F.2d 1134, 1138 (4th Cir. 1990). Thus, the court GRANTS defendants' motion for summary judgment as to plaintiff's claim against defendants in their official capacities.

The court next turns to plaintiff's Eighth Amendment claim against defendants in their individual capacities. Defendants raise the affirmative defense of qualified immunity in this § 1983 action. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

The court first determines whether plaintiff has established an Eighth Amendment violation. The Eighth Amendment's Cruel and Unusual Punishments Clause imposes on prison officials "a duty . . . to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994); Danser v. Stansberry, 772 F.3d 340, 346 (4th Cir. 2014). To state a claim for failure to protect, an inmate must allege: (1) "serious or significant physical or emotional injury," and (2) that prison officials exhibited deliberate indifference to inmate health and safety. De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003) (internal quotation marks

6

omitted); Farmer, 511 U.S. at 837-38. Deliberate indifference requires that a prison official "know of and disregard an objectively serious ... risk of harm." De'Lonta, 330 F.3d at 634. "[T]he official must be both aware of facts from which the inference could be drawn that a possibility of harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

The court focuses its inquiry on the subjective prong of the Eighth Amendment test. As the Fourth Circuit set forth in Danser,

> A plaintiff establishes "deliberate indifference" by showing that the prison official "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." [Farmer, 511 U.S.] at 837, 114 S. Ct. 1970. Importantly, deliberate indifference is "a very high standard," Grayson v. Peed, 195 F.3d 692, 695 (4th Cir.1999), which requires that a plaintiff introduce evidence suggesting that the prison official had actual knowledge of an excessive risk to the plaintiff's safety. Farmer, 511 U.S. at 837, 114 S. Ct. 1970. Notably, the official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.; see also id. at 840–42, 114 S. Ct. 1970 (evidence concerning "constructive notice" of a substantial risk is generally not sufficient proof to establish a deliberate indifference claim); Rich v. Bruce, 129 F.3d 336, 338–40 (4th Cir.1997). A "showing of mere negligence" will not suffice. Grayson, 195 F.3d at 695. Thus, "an official's failure to alleviate a significant risk that he should have perceived but did not" will not give rise to a claim under the Eighth Amendment. Farmer, 511 U.S. at 838, 114 S. Ct. 1970; Iko, 535 F.3d at 241 (stating that "[i]t is not enough that the [defendant] should have recognized" a substantial risk of harm for purposes of a deliberate indifference claim) (citation and internal quotation marks omitted).

Danser, 772 F.3d at 347.

Here, plaintiff cannot establish that any defendant acted with deliberate indifference to an excessive risk to plaintiff's safety. For instance, the record reflects none of the defendants were physically present for, or actually witnessed, what caused the fight between plaintiff and Barry. Plaintiff never informed defendants of any dispute between plaintiff and Barry prior to the

7

September 9, 2021, incident. Plaintiff also did not inform defendants that he feared for his life, or that he was in danger, prior to the September 9, 2021, incident. To the extent plaintiff asserts Maury was understaffed, there is no evidence to substantiate this claim. There, additionally, is no evidence to support plaintiff's contention that another inmate was stabbed under the same or similar circumstances on the same day. Finally, the record reflects the DAC has policies in place to prevent inmate-on-inmate violence. See Owens v. Baldwin, 822 F. App'x 490, 491–92 (7th Cir. 2020) (citing Shields v. Dart, 664 F.3d 178, 181 (7th Cir. 2011)) ("[T]he general risk of violence associated with placement in a higher-security prison does not, in itself, suggest knowledge of a substantial risk of harm."); Kershner v. Wright, No. 7:16-cv-00063, 2017 WL 1410852, at *4 (W.D. Va. Apr. 19, 2017); see also, Hurt v. White, No. DKC-14-1315, 2015 WL 1522944, at *11 (D. Md. Apr. 1, 2015) ("Plaintiff cannot claim a violation of his Eighth Amendment right to be free from cruel and unusual punishment where he is the instigator of violence.").

In essence, plaintiff simply has not met his burden of coming "forward with specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 586–87; Celotex, 477 U.S. at 324; Hamstead v. Walker, No. 20-1650, 2022 WL 5133569, at *5 (4th Cir. 2022); Sedar v. Reston Town Ctr. Prop., LLC, 988 F.3d 756, 761 (4th Cir. 2021) ("[T]he nonmoving party, to survive the motion for summary judgment, must demonstrate specific, material facts that give rise to a genuine issue.") (citing Celotex, 477 U.S. at 323)); CTB, Inc. v. Hog Slat, Inc., 954 F.3d 647, 658 (4th Cir. 2020) ("[A] party's self-serving opinion [] cannot, absent objective corroboration, defeat summary judgment.") (citations omitted). Plaintiff, instead, presented unsupported conclusory allegations in his unverified complaint. This is insufficient to establish a constitutional violation. See Boone v. Everett, 671 F. App'x 864, 866-67 (4th Cir. 2016); White v. White, 886

8

F.2d 721, 723 (4th Cir. 1989); Williams v. Stonebreaker, No. 8:22-cv-01658-JFA-BM, 2024 WL 3666409, at *8 (D.S.C. May 21, 2024), adopting R&R, 2024 WL 3408599 (July 15, 2024); Oxendine-Bey v. Mitchell, No. 3:14-cv-651-FDW, 2016 WL 4546447 at *7 (W.D.N.C. Aug. 31, 2016) ("Allowing a plaintiff to prevail in a Section 1983 action, based merely on general concerns about non-specific threats to his safety, where the prisoner is subsequently attacked, would result in the strict liability of prison officers.") (citations omitted), aff'd, 688 F. App'x 182 (4th Cir. 2017). Based upon the foregoing, plaintiff cannot establish an Eighth Amendment violation, and defendants are entitled to qualified immunity.

## CONCLUSION

In summary, defendants' unopposed motion to seal (DE 64) is GRANTED. The Clerk of Court is DIRECTED to maintain (DE 63) under seal. Defendants' unopposed motion for summary judgment (DE 59) also is GRANTED. The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the **29** day of October, 2025.

*Terrence Boyle*
TERRENCE W. BOYLE
United States District Judge